FILED'07 DEC 3 15:02USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DARYL RAY HOUSTON,                )
                                  )
         Plaintiff,               )      Civil No. 06-6296-AA
                                  )         OPINION AND ORDER
    vs.                           )
                                  )
CITY OF COQUILLE, COQUILLE        )
POLICE DEPARTMENT, and POLICE     )
OFFICER JAMES BRYANT,             )
                                  )
         Defendants.              )
_____)

Manuel C. Hernandez
Attorney at Law
1212 Alabama, Suite 25
P.O. Box 979
Bandon, OR 97411
    Attorney for Plaintiff

Bruce L. Mowery
Attorney at Law
280 Liberty St., SE, Suite 206
Salem, OR 97301
    Attorney for Defendants

Page 1 - ORDER AND OPINION

AIKEN, Judge:

In this civil rights action, plaintiff Daryl Ray Houston brings federal and state claims against the City of Coquille, the Coquille Police Department, and Coquille police officer James Bryant. Specifically, plaintiff alleges that Officer Bryant conducted an investigatory stop and subsequent arrest without probable cause, in violation of the Fourth Amendment. Plaintiff also alleges intentional infliction of emotional distress, violations of criminal statutes, negligent supervision and retention, and false arrest and imprisonment, in violation of Oregon law. The case is before this court on defendants' motion for summary judgment. The court heard telephone oral argument on December 3, 2007. Defendants' motion for summary judgment is granted; defendants' motion to strike is denied as moot. This case is dismissed.

## Background

On the evening of November 1, 2004, plaintiff visited a tavern in Coquille, Oregon, where plaintiff consumed four to six eight-ounce beers. When the tavern closed at 5 p.m., plaintiff departed for a nearby restaurant, where he ate dinner and consumed a twelve-ounce beer. At that time, plaintiff felt the affects of the alcohol and didn't think he could drive, so he asked a friend if he could sleep at his friend's apartment. Plaintiff slept from approximately 7 p.m. until 11:15 p.m., when

Page 2 - ORDER AND OPINION

he left his friend's apartment to drive home.

As plaintiff neared an intersection, Officer Bryant alleges that plaintiff slowed but did not come to a complete stop at the intersection's stop sign; the officer also did not see plaintiff activate a left-hand turn signal. As Officer Bryant began to follow plaintiff's vehicle, he noticed that the vehicle lacked the proper license plate light as required by Oregon law.

Officer Bryant then activated his overhead emergency lights in order to initiate a traffic stop. The officer believed that plaintiff was ignoring him, attempting to elude him, or not keeping a proper lookout because, in the officer's opinion, plaintiff traveled an unreasonable distance before turning into the parking lot of a Fast Mart. Plaintiff contends that Officer Bryant did not catch up to him until plaintiff had already pulled into the Fast Mart parking lot on his own accord. Plaintiff exited his vehicle to enter the Fast Mart, but he cooperated with Officer Bryant when the officer approached him.

Officer Bryant testifies that upon requesting plaintiff's license, registration, and proof of insurance, the officer had to repeatedly ask for plaintiff to produce those items. Officer Bryant and plaintiff then walked to the back of plaintiff's vehicle and were unable to locate a license plate light. During their exchange, Officer Bryant observed that plaintiff's eyes were watery and bloodshot, and that a moderate odor of alcohol

Page 3 - ORDER AND OPINION

emanated from plaintiff's vehicle.  Although plaintiff denies that his eyes were watery and bloodshot, he concedes that they may have been so "from sleeping," and plaintiff testified that he had "no idea" whether there was an odor of alcohol on his breath. When the officer asked plaintiff if he had been drinking, plaintiff admitted to consuming "five or six or seven" beers earlier in the evening.  The parties dispute whether plaintiff again tried to enter the Fast Mart during their conversation.

Based upon his observations of plaintiff's driving, appearance, and behavior, Officer Bryant believed that plaintiff was driving under the influence of intoxicants.  The officer asked plaintiff to perform a field sobriety test and a breath test; plaintiff refused to do so.  At some point in the evening, Officer Bryant looked in plaintiff's mouth and observed what he believed were raised taste buds and green coloration of the tongue, indicating marijuana use.  Officer Bryant arrested plaintiff for driving under the influence of intoxicants (DUII) and transported plaintiff to the Coos County jail.

Upon arrival at the jail, plaintiff again refused to submit to a breath test.  A search of plaintiff's person revealed less than one ounce of marijuana.  Officer Bryant issued a citation for DUII, possession of a controlled substance, and refusal to submit to a breath test.  The officer confiscated plaintiff's driver's license and issued a temporary driving permit; the

Page 4 - ORDER AND OPINION

officer explained to plaintiff that the temporary permit would not take effect until 12 hours after its issuance. At approximately 1:55 a.m., plaintiff agreed to undergo a breath test, which measured plaintiff's blood alcohol level at .04. When a subsequent breath test administered at approximately 4:24 a.m. revealed plaintiff's blood alcohol level to be .00, plaintiff was released from the Coos County jail.

Upon his release from jail, plaintiff walked back to his vehicle in the Fast Mart parking lot. Plaintiff called the police dispatcher to determine where his car keys were located. The dispatcher agreed to ask Officer Bryant where plaintiff's car keys were located and reminded plaintiff that his temporary driver's permit would not be effective until twelve hours after the time of issuance. Officer Bryant indicated to the dispatcher that he was going to return to the Fast Mart to see if plaintiff decided to drive his car, and the officer instructed the dispatcher to tell plaintiff that the car keys were in plaintiff's wallet. When plaintiff began to drive his car, Officer Bryant initiated a traffic stop, issued plaintiff a citation for driving with an invalid operator's license, and ordered plaintiff's car to be towed.

Subsequent to this incident, plaintiff's driving privileges

were suspended under the Implied Consent Law.[1] Plaintiff requested a hearing on the proposed suspension before the Office of Administrative Hearings for the Oregon Department of Transportation, Driver and Motor Vehicles Services Division. The administrative law judge concluded as a matter of law that Officer Bryant had probable cause to arrest plaintiff for DUII and that plaintiff was properly informed of his rights under the Implied Consent Law. The Coos County Circuit Court reviewed and affirmed the ruling of administrative law judge; at this time, plaintiff is appealing that decision to the Oregon Court of Appeals.

## Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Substantive law on an issue determines the materiality of a fact. T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a

---

[1] Or. Rev. Stat. § 811.265 provides that any person operating a motor vehicle on public roads gives implied consent to a chemical breath test, and those who refuse to comply are subject to a suspension of their driving privileges.

Page 6 - ORDER AND OPINION

verdict for the nonmoving party determines the authenticity of a dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Electrical, 809 F.2d at 630.

## Discussion

### I. Plaintiff's § 1983 Claims

To state a claim under 42 U.S.C. § 1983, plaintiff must establish: (1) deprivation of a right secured by the Constitution of the United States or federal laws, and (2) that the alleged deprivation was committed under color of state law. Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49 (1999).

Plaintiff concedes that the Coquille Police Department is not a "person" subject to liability under § 1983 and therefore

cannot be sued in this action. Plaintiff also concedes that a municipality is not liable for the actions of its employees under § 1983 and plaintiff does not allege that the municipality's official policy or custom is the moving force behind plaintiff's constitutional violation. Therefore, finding no disputed issue of material facts regarding plaintiff's claims against the Coquille Police Department or the City of Coquille, defendants' motion for summary judgment against those parties is granted.

The only remaining claim to which plaintiff has not conceded are those alleged against police officer James Bryant. Neither party disputes that Officer Bryant was acting under color of state law. However, plaintiff alleges that Officer Bryant's investigatory stop and subsequent arrest of plaintiff deprived him of his constitutional rights under the Fourth Amendment. The Fourth Amendment protects an individual against unreasonable searches and seizures.

*The Investigatory Stop*

A police officer may seize a person for a brief investigatory stop when the officer has a "reasonable suspicion" to believe that the individual has committed wrongdoing. See Terry v. Ohio, 392 U.S. 1, 23-27 (1968). Reasonable suspicion requires "specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that a particular person is engaged in criminal conduct." United

States v. Thomas, 211 F.3d 1186, 1189 (9th Cir. 2000)(internal quotations omitted). The Fourth Amendment requires a standard of reasonableness, not certainty, and a sufficient probability is the touchstone of reasonableness. Hill v. California, 401 U.S. 797, 804 (1971). An investigatory traffic stop is justified if a police officer has a reasonable suspicion to believe that an offense has occurred. United States v. Lopez-Soto, 205 F.3d 1101, 1104-05 (9th Cir. 2000).

Here, Officer Bryant had reasonable suspicion to believe that plaintiff violated Oregon traffic laws. The officer observed plaintiff's car approach an intersection but fail to come to a complete stop or use an appropriate turn signal.[2] As Officer Bryant's patrol car neared plaintiff's vehicle, the officer noted that plaintiff's vehicle lacked the proper lighting to illuminate the license plate.[3] After Officer Bryant initiated the stop, both he and plaintiff examined the license plate and were unable to find the lighting required by law.

Plaintiff argues that Officer Bryant did not inspect the vehicle with the lights on, and therefore could not determine

---

[2] Or. Rev. Stat. § 811.265 requires a driver to obey traffic control devices such as stop signs. Or. Rev. Stat. § 811.400 requires a driver to use appropriate signal lights when a vehicle makes a turn.

[3] Or. Rev. Stat. § 811.265 requires lighting that renders the rear registration plate clearly legible from a distance of 50 feet to the rear.

Page 9 - ORDER AND OPINION

whether the proper lighting was in place. In addition, plaintiff argues that Officer Bryant could not see from the officer's vantage point whether plaintiff actually came to a complete stop or used his turn signal; plaintiff contends that he always comes to a complete stop when driving.

Nonetheless, prior to an investigatory stop a police officer is not required to have absolute certainty, or even probable cause, that wrongdoing has occurred; rather, the officer is required to have merely reasonable suspicion. Officer Bryant observed a lack of proper lighting on the license plate prior to the stop, and plaintiff himself was unable to locate the proper lighting after the stop. In addition, the officer observed what he believed was a failure to follow traffic control devices and to use proper signal lights. The law allows an officer to conduct an investigatory traffic stop if he or she has a reasonable suspicion to believe that an offense has occurred. Officer Bryant's observations, taken together and based on his police training and experience, gave Officer Bryant reasonable suspicion to believe that plaintiff violated Oregon traffic laws. Therefore, the stop was authorized. I find no violation of plaintiff's Fourth Amendment rights based on the officer's investigatory stop.

*The Arrest*

During the investigatory stop, Officer Bryant made

observations that led him to suspect that plaintiff was driving under the influence of intoxicants; the officer later arrested plaintiff based on that suspicion. Plaintiff alleges that Officer Bryant lacked probable cause for the arrest, and therefore the arrest deprived plaintiff of his constitutional rights under § 1983.

Whether a warrantless arrest is constitutionally valid depends upon whether, at the moment of arrest, the officer had probable cause to make the arrest. United States v. Martin, 509 F.2d 1211, 1213 (9th Cir. 1975). The existence of probable cause negates a § 1983 claim based on false arrest and the legality of the arrest is not affected by the subsequent dismissal or acquittal of the charges. Pierson v. Ray, 386 U.S. 547, 555 (1967). Probable cause exists when the officer's knowledge of reasonably trustworthy information is sufficient to warrant a prudent person to believe that an offense has been or is being committed. Graves v. City of Coeur D'Alene, 339 F.3d 828, 841 (9th Cir. 2003). The court looks to the totality of the circumstances known to the officer at the time of the arrest to determine whether probable cause existed. United States v. Butler, 74 F.3d 916, 920 (9th Cir. 1996).

Here, several facts provided indicia of intoxication sufficient to justify probable cause for plaintiff's arrest: the officer had to ask plaintiff repeatedly to produce the proper

Page 11 - ORDER AND OPINION

documents; plaintiff's eyes appeared watery and bloodshot; he emanated an odor of alcohol; and he admitted to the officer that he consumed up to seven beers earlier in the evening. The totality of the circumstances known to Officer Bryant at the time of plaintiff's arrest were sufficient to warrant a prudent person to believe that plaintiff was intoxicated. Therefore, Officer Bryant had probable cause to arrest plaintiff for driving under the influence of intoxicants. Therefore, defendant's summary judgment motion is granted as to plaintiff's § 1983 claim against Officer Bryant. Therefore, I find no violation of plaintiff's constitutional rights under § 1983 based on the arrest.

## II. Plaintiff's State Claims

Without plaintiff's § 1983 claim, the only claims that remain are those alleging state statutory or common-law violations; those claims may come within this court's jurisdiction only by way of supplemental jurisdiction. Title 28 U.S.C. § 1367 provides the basis for supplemental jurisdiction:

> Except as otherwise provided in subsection (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Subsection (c) of 28 U.S.C. § 1367 gives the court discretion to "decline to exercise" supplemental jurisdiction in various

Page 12 - ORDER AND OPINION

circumstances, including when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Although this exercise is discretionary with the court, the Ninth Circuit has strongly advised that in most circumstances, the *proper* exercise of discretion requires the dismissal of the state claims. Reynolds v. County of San Diego, 84 F.3d 1162, 1171 (9th Cir. 1996) (emphasis in original) (quoting Wren v. Sletten Const. Co., 654 F.2d 529, 536 (9th Cir. 1981)).

Here, plaintiff's single claim over which the court has original jurisdiction has been dismissed, and the court declines to exercise supplemental jurisdiction over the remaining state law claims against defendants.[4] Therefore, defendants' summary judgment motion on plaintiff's remaining claims is denied as moot.

///
///
///
///
///
///

---

[4] The Ninth Circuit recommends that a case dismissed for lack of subject matter jurisdiction ordinarily should be dismissed without prejudice so that a plaintiff may reassert his or her claims in state court. Frigard v. United States, 862 F.2d 201, 204 (9th Cir. 1988) (internal citation omitted).

Page 13 - ORDER AND OPINION

## Conclusion

Defendants' motion for summary judgment (doc. 15) is granted as to plaintiff's § 1983 claim and denied as moot as to plaintiff's other claims. Defendants' motion to strike (doc. 40) is denied as moot. This case is dismissed.

IT IS SO ORDERED.

Dated this 3 day of December 2007.

*Ann Aiken*
Ann Aiken
United States District Judge